UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE TRADEWELL GROUP, INC.,
a Florida Corporation

       Plaintiff,

v.                              Case No.: 2:21-cv-130-SPC-MRM

JOE AMORE,

       Defendant.

_____/

## OPINION AND ORDER[1]

Before the Court is Defendant Joe Amore's Motion for Summary Judgment (Doc. 41).

## Background

Plaintiff The Tradewell Group, Inc. owns intellectual property rights to a type of disposable cutting board, including United States Patent No. 6,164,478 and the trademark CUT & TOSS. In July 2009, Tradewell and Amore executed an Exclusive Category Information & Patent License Agreement. (Doc. 17 at 10-37). The purpose of the Agreement was to give

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

Amore the exclusive right to sell CUT & TOSS disposable cutting boards at barbeque events and to barbeque retailers. In exchange, Amore agreed to pay licensing fees and royalties to Tradewell and to discontinue all sales of the cutting boards after termination of the Agreement (except to liquidate remaining inventory).

Amore terminated the Agreement when the '478 Patent expired on June 18, 2018. He stopped paying Tradewell license fees and royalties, but he continued selling the cutting boards (though apparently not under the CUT & TOSS brand). Tradewell sues Amore for breach of the Agreement. Amore moves for summary judgment, arguing the Agreement became unenforceable when the '478 Patent expired. Tradewell counters that the Agreement remains enforceable because it licensed trade secrets in addition to the '478 Patent.

**Legal Standard**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to judgment as a matter of law, the non-moving party must establish each essential element to that party's case. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (1994).

## Discussion

The central issue in this case is whether the Agreement survived expiration of the '478 Patent.[2] Analysis of this issue must start with *Brulotte v. Thys Co.*, 379 U.S. 29 (1964). In *Brulotte,* the Supreme Court held that "a patentee's use of a royalty agreement that projects beyond the expiration date

---

[2] The parties do not dispute the contents of the Agreement or the June 18, 2018 expiration of the '478 Patent.

3

of the patent is unlawful per se." 379 U.S. at 32. Justice Kagan later summarized the *Brulotte* Court's reasoning:

> To arrive at that conclusion, the Court began with the statutory provision setting the length of a patent term. Emphasizing that a patented invention becomes public property once that term expires, the Court then quoted from *Scott Paper*: Any attempt to limit a licensee's post-expiration use of the invention, whatever the legal device employed, runs counter to the policy and purpose of the patent laws. In the *Brulotte* Court's view, contracts to pay royalties for such use continue the patent monopoly beyond the patent period, even though only as to the licensee affected. And in so doing, those agreements conflict with patent law's policy of establishing a post-expiration public domain in which every person can make use of a formerly patented product.

*Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 452-53 (2015) (cleaned up).

The parties of course disagree on the impact *Brulotte* has on the Agreement. And while the parties do not dispute the contents of the Agreement, they emphasize different aspects to support their positions. In the Agreement, Tradewell promised to make available to Amore two categories of information. First, Tradewell provided "LICENSED TECHNICAL INFORMATION"—defined as "such patterns, drawings, specification and other technical information shown in the ['478 Patent] or that [Tradewell] may update by written amendment." Because there were no amendments, Amore argues the Agreement is a pure patent licensing agreement. But that ignores the second category of information provided, which Tradewell considers its trade secrets: "designated raw material supplier(s), manufacturer/converter(s),

4

packager(s), [and] approved logo specifications for the [CUT & TOSS] BRAND." (Doc. 17 at 11-14).[3]

There is no doubt that trade secret agreements are governed by state law—they are not subject to preemption by federal patent laws. *See Aronson v. Quick Point Pencil Co.*, 440 U.S. 257 (1979) *and Kewanee oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974). Contracts that license both patent rights and trade secrets—"hybrid" agreements—require a more nuanced analysis. The Eleventh Circuit provided a framework in *Pitney Bowers, Inc. v. Mestre,* 701 F. 2d 1365 (1983). The *Pitney* court rejected the argument that *Brulotte* does not apply to hybrid agreements for two reasons. First, the contract at issue in *Brulotte* involved non-patent considerations, but the Supreme Court "cut off both the patent and non-patent royalties," and dicta in *Aronson* further suggested a willingness to terminate royalty rights in a hybrid agreement. *Pitney,* 701 F.2d at 1371-72. Second, while *Aronson* and *Kewanee*—two cases Tradewell relies on—support enforcement of trade secret law against federal preemption, neither case involved information covered by a patent. *Id.* at 1372.

Having found *Brulotte* applicable to hybrid agreements, the *Pitney* court turned to the contract at issue. It found two aspects of the contract controlling.

---

[3] It is not necessary to determine whether this information fits any legal definition of "trade secret." Amore does not challenge Tradewell's characterization of the information as trade secrets, and the Court will use the term for the sake of simplicity.

5

"First, the 'exclusive rights' granted under the agreement applied equally before and after the expiration of the patent." *Id.* at 1373. "Second, the agreement required Pitney Bowes to pay royalties at the same rate and on the same basis after the patents expired that it paid while the patent was in effect." *Id.* The Eleventh Circuit inferred from these clues "'that the licensor was using the license to project its monopoly beyond the patent period.'" *Id.* (quoting *Brulotte,* 379 U.S. at 32).[4]

The Agreement here contains the same key features the Eleventh Circuit found controlling in *Pitney*. The exclusive license of patent rights and trade secrets provided to Amore remained unchanged after expiration of the '478 Patent. And the Agreement required Amore to pay the same license fees and royalties before and after expiration of the patent. The Agreement therefore impermissibly extends Tradewell's monopoly beyond the patent period, and it became unenforceable when the '478 Patent expired. As in *Brulotte* and *Pitney*, the non-patent consideration Amore received in the Agreement does not save it from federal supremacy.

Accordingly, it is now

**ORDERED:**

---

[4] The *Pitney* opinion suggests that a hybrid agreement might survive *Brulotte* if it allocates payments between trade secrets and patent rights because separate payments for trade secrets would not necessarily conflict with patent law. *Pitney*, 701 F.2d at 1372 n.12. The Agreement here contains no such allocation.

Defendant Joe Amore's Motion for Summary Judgment (Doc. 41) is **GRANTED**.

1. The Treadwell Group's Amended Complaint (Doc. 17) is **DISMISSED with prejudice**.
2. The Clerk is **DIRECTED** to enter judgment, terminate pending motions and deadlines, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on November 19, 2021.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record